THE WASHBURN LIGNITE COAL COMPANY, a Corporation, and the Washburn Lignite Coal Company, a Corporation, as a Taxpayer for Itself and for all other Taxpayers in the State of North Dakota, Appellant, v. R. B. MURPHY, F. E. Diehl, W. J. Church, Minnie J. Nielson, Joseph A. Kitchen, Comprising the Board of Administration of the State of North Dakota; Ernest G. Wanner as Secretary of the Board of Administration; the Board of Administration of the State of North Dakota; Republic Coal Company, a Corporation; Knife River Coal Company, a Corporation; Lucky Strike Coal Company, a Corporation, Respondents.

(208 N. W. 837.)

**States — duty of board of administration to let contract to lowest bidder.**

1. Section 1828, Comp. Laws 1913, as amended by chapter 78, Sess. Laws 1915, provides that the various state institutions shall use native lignite coal or lignite coal products for fuel and that purchases thereof shall be made upon advertised proposals for bids from the lowest responsible bidders based on the standard contract grade established by the statute. The plaintiff is a corporation engaged in the business of mining and selling lignite coal in the state of North Dakota. It, with the named corporate defendants, was a bidder in response to proposals for bids published pursuant to § 1828 by the defendant, board of administration, a state board charged with the purchase of fuel for state institutions. Certain of the plaintiff's bids were accepted and contracts awarded to it, and certain of the defendant corporations' bids were accepted and contracts awarded to them. Plaintiff brings this action as a bidder, and as a taxpayer for itself and all other taxpayers, to restrain the execution and carrying out of the contracts with and by the defendant corporations on the ground that they were not the lowest responsible bidders. *Held:* That it was the duty of the defendant Board of Administration under the statute to determine the lowest responsible bidders and to let the contracts to none but those whose bids were found to be lowest;

**States — bidder not entitled to relief, when.**

2. That as a bidder who participated and made no objection until a competitor's bid was accepted, plaintiff is not entitled to any relief merely because

Note.—(1) As to discretion in choosing between bidders for public contract, see annotation in 38 L.R.A.(N.S.) 653. 22 R. C. L. 614.

(3) Remedy of lowest bidder for refusal of authorities to award contract to him, see annotation in 30 L.R.A.(N.S.) 126. 19 R. C. L. 1069.

54 N. Dak.—8.

of the method of determining the lowest bidders and of letting the contracts, even though the method prescribed by the statute was not followed;

**States — taxpayer not entitled to injunctional relief pendente lite, when board exercised honest judgment in letting contract to lowest bidder.**

3. That so far as appears the board exercised its honest judgment and accepted the bids of and entered into contracts with the lowest bidders, and as a taxpayer the plaintiff suffered no damage and is not entitled to injunctional relief pendente lite, even though the method followed by the board in determining the lowest bidder and letting the contracts was not that contemplated by the statute.

Opinion filed May 1, 1926.

States, 36 Cyc. p. 876 n. 40, 46 New; p. 900 n. 28 New.

Appeal from the District Court of Burleigh County, *Jansonius,* J.

From an order of the district court vacating a temporary restraining order and denying a temporary injunction, plaintiff appeals.

Affirmed.

*Shure & Murphy,* for appellant.

The appellant does not dispute that where the word "responsible" is used, it generally operates to vest the board of purchasing officers with certain discretion in choosing between bidders. Case note to Butler v. Darst, 38 L.R.A.(N.S.) 653.

Now, among the subjects of this discretion, is the question of quality. Butler v. Darst, 38 L.R.A.(N.S.) 653; Note to Kolling v. Edwards, 38 L.R.A.(N.S.) 668.

*Geo. F. Shafer,* Attorney General, and *John Thorpe,* Assistant Attorney General, for respondents.

The granting or refusal of a temporary injunction pending the trial of the action rests largely in the discretion of the trial court. Sand v. Peterson, 30 N. D. 171, 152 N. W. 271.

Statutes which require contracts to be let to the lowest bidder are designed for the protection of taxpayers and not for the benefit of the bidders, and such statute cannot be enforced by the lowest bidder by equitable proceedings, when the contract has been awarded to another. 19 R. C. L. 1068 and cases cited under note 2, p. 1069; 15 C. J. 552; State v. Hindson, 120 Pac. 485; Mortland v. Poweshiek County, 137 N. W. 1009.

'A temporary injunction will not issue in a suit, the only object of which is a permanent injunction, if the court is of the opinion that there is no probability that the complainant will succeed on the merits. Montgomery, Ward & Co. v. S. D. Retail Asso. 150 Fed. 413.

Where, as in this case, there is no pretense of bad faith, we think that the elasticity of the standard, however much to be regretted, must be presumed by us to be unavoidable, and hence, to afford no sufficient ground for reviewing the director's discretion. Louchheim v. Philadelphia, 15 Pa. Dist. R. 311.

NUESSLE, J. This is an appeal from an order of the district court of Burleigh county vacating a temporary restraining order and denying a temporary injunction.

The plaintiff is a corporation engaged in the mining of lignite coal at Wilton, Burleigh county, North Dakota. Its mines are east of the Missouri river on the Northern Pacific and Soo railroads. The individual defendants are members and officers of the board of administration of the state of North Dakota. The other named defendants are corporations engaged in the business of mining and selling lignite coal. Their mines are in North Dakota west of the Missouri river on the Northern Pacific Railroad. The board of administration of the state of North Dakota is charged with the supervision and administration of the state's educational, charitable, penal, and other institutions. See chapter 71, Sess. Laws 1919. In June, 1925, pursuant to its duty, the board of administration advertised notice for bids for the coal required to supply the various institutions under its administration through the year 1925–1926 in the aggregate amount of some 75,000 tons. The notice for bids, among other things, stipulated:

"Quality. All coal furnished under the contract, unless otherwise specified, shall be the best grade heating and steaming lump coal, free from slack, screening, clay, shale, dirt, and all other foreign substances."

"Proposals are desired on standard contract grade lignite coal, as provided under House Bill 304, Laws 1915 Legislative Session, and on lignite screenings in such amounts as mines may be able to supply during season."

"All coal delivered under contract to be let which falls below the chemical analysis or specified grade, may be rejected by the institution

to which it is consigned, or accepted upon such deductions as to price as may be just and proper."

This notice for bids was published pursuant to § 1828, Comp. Laws 1913 as amended by chapter 78, Sess. Laws 1915 (House Bill No. 304) which reads as follows:

"The various state institutions, county buildings and public school houses in this state shall use for fuel, native or lignite coal, or lignite coal products, and it shall be unlawful for any officer to purchase for use in such institutions, county buildings and public schools any coal other than that taken from the mines within the boundaries of this state. This section shall not be construed, however, as prohibiting the use of other coal or wood at such institutions, county buildings and public schools, when the cost thereof does not exceed that of native coal, or the use of coal other than native lignite coal or lignite coal products at such public schools as are located six miles or more from any mine or railroad station within the boundaries of this state; provided, that the comparative cost of such fuel is not greater than that of lignite coal, or lignite coal products.

"All purchases of lignite coal shall be based upon proposals published in some newspaper, published in and having a general circulation in the state of North Dakota, and copies of said proposals shall be filed in the office of the secretary of state at Bismarck, North Dakota, on or about the date thereof and said purchases of lignite coal shall be made from the lowest responsible bidder and shall be based on the following standard contract grade.

"Two thousand (2,000) pounds shall constitute one (1) ton standard contract grade of lignite coal.

"Standard contract grade of lignite coal shall contain as delivered thirty-three (33) per cent of moisture as determined at one hundred and five (105) degrees Centigrade (c.). For actual weight of moisture above thirty-five (35) per cent deduct proportionately the price per ton. "Standard contract grade lignite coal, water-free basis, shall contain from ten (10) to fifteen (15) per cent of ash. For each one (1) per cent of ash above fifteen (15) per cent deduct two and one-quarter ($2\frac{1}{4}$) per cent of the bid price per ton. For each one (1) per cent below the ten (10) per cent add one and three fifths ($1\frac{3}{5}$) per cent of the bid price per ton.

"Standard contract grade lignite coal shall contain, water-free basis, not over two (2) per cent of sulphur. For each one (1) per cent or major fraction thereof above two (2) per cent deduct two (2) per cent of the bid price per ton.

"Standard contract grade lignite coal shall contain, water-free basis, nine thousand five hundred (9,500) British thermal units (B. T. U.) and the price per ton shall be based upon that number of heat units. When the British thermal units (B. T. U.) are in excess of that amount, such excess shall be paid for proportionately; and if the contents are less than nine thousand five hundred (9,500) British thermal units (B. T. U.) then a proportionate amount shall be deducted from the price.

"The method of ascertaining the above facts shall be agreed upon between buyer and seller; provided, that any school or institution which does not use to exceed fifty (50) tons of coal in any one year shall not be required to publish for proposals as herein provided.

PENALTY. Any board having charge or control of such school or institution which shall purchase fuel in violation of the provisions of § 1828, shall be personally liable for the purchase price thereof and such school or institution shall not be liable therefor. Provided, however, that this Act shall not apply to country schools or public buildings where no janitor is employed."

In response to the advertised notice the plaintiff and the defendant corporations submitted bids for coal to be supplied to various of the institutions. The institutions in question are located at different points in the state, on different lines of railroad more or less remote from the mines. The bids submitted in each case set out a "guaranteed average delivery analysis, wet-basis" of the coal proposed to be sold. From these analyses it appears that there was more or less difference in the coal proposed to be supplied by the several bidders as regards percentage of moisture, volatile matter, fixed carbon, ash, and sulphur. Each of the bids also contained a guaranty as to the British thermal units per pound of coal with moisture as delivered at the various institutions. There was considerable difference in the coal in this respect also. None of the coal proposed to be furnished was of the statutory standard contract grade. Under the terms of the notice for bids, prices were to be made either in bins or f. o. b. point of delivery. In each bid where

the coal was not required to be delivered in bins prices were made f. o. b. mine, and the freight rates to points of delivery at the several institutions were scheduled as part of the bid. The board of administration after considering the bids awarded the plaintiff company contracts for 9,900 tons of coal to be delivered at different institutions, and awarded to the defendants Knife River Coal Company and Republic Coal Company contracts for some 25,000 tons of coal to be delivered at different institutions. The bids of the latter two companies as submitted were for a lower price per ton for the coal, but the plaintiff had the advantage in freight rates and thus its whole delivery price per ton was somewhat lower, the difference ranging from one cent to forty-eight cents per ton. When the defendant board of administration awarded the contracts to the defendant companies, the plaintiff brought this action individually in its own behalf as the lowest bidder, and as a taxpayer in its own behalf and in behalf of other taxpayers to enjoin the parties from entering into the proposed contracts and from carrying them out if already entered into. On the initiation of the action the plaintiff procured an order to show cause why a temporary injunction should not be issued during the pendency of the action and at the same time obtained the issuance of a temporary restraining order pending the hearing on the order to show cause. On the return day of the order to show cause the defendants appeared, made showing in opposition to the showing as made by the plaintiff, and prayed for a vacation of the temporary restraining order and a denial of the temporary injunction. The court after considering the showings made by the respective parties vacated the temporary order and denied the injunction pendente lite. Whereupon the plaintiff perfected the instant appeal to this court.

Defendants in their showing in opposition to the order to show cause admitted the making of the various contracts as complained of and set up that the same were made with the lowest responsible bidders under the provisions of chapter 78, supra, as measured by the contract grade therein established; that the bids as submitted by the plaintiff and by the defendant corporations were, and were intended to be for the prices therein specified for the coal to be furnished by each bidder, and there were to be no deductions from or additions to such prices for and on account of variations from the standard contract grade established by the statute; that the bids of the defendant corporations which were

accepted were the lowest bids considering the quality and character of the coal proposed to be furnished as shown by the analyses submitted by the bidders.

It is the contention of the plaintiff that it was the lowest and best bidder; that it was responsible; that under the statute the defendant board of administration had no discretion in the matter; that it had no right to pass upon and determine the quality of the coal proposed to be furnished. On the other hand the defendants contend: That the board of administration is a public board; that it is charged with the duty of procuring coal for the various state institutions; that the board acted in good faith; that the bids which were accepted were the lowest and best bids; that in any event a temporary injunction should not be issued for the reason that it is necessary that the institutions under the board's charge and direction be supplied with fuel; that the board is vested with discretion under the statute to pass upon the quality of the coal to be furnished; that it acted in good faith in the exercise of that discretion and that its judgment is final except in case of fraud or abuse of discretion; that though the lowest bidder, plaintiff is not by virtue of that fact clothed with the right to compel the letting of the contract to it, or prevent the letting to another bidder; that though the contracts were not let to the lowest bidders the increased tax burden on account of that fact in so far as it fell upon the plaintiff was so inconsiderable that it did not warrant any objection by plaintiff as a taxpayer; that under the statute if a contract is wrongfully let the only remedy is by action against the participating members of the Board under the penalty provision contained in § 2 thereof.

We think from the showing as made by the respective parties that it may stand as conceded that the plaintiff corporation is responsible. Likewise, that there was no fraud on the part of the defendant Board in accepting the bids and letting the contracts complained of to the defendant corporations. We think there can be no question but that under the statute, which provides that the contract shall be let to the lowest responsible bidders, all being responsible, the Board had no discretion in the matter other than to determine who were the lowest bidders, and having made that determination it was under the duty to let the contract to those bidders whose bids were found to be lowest. There re-

mains then only the question as to whether the defendant corporations were the lowest bidders.

The purpose and object of chapter 78, Sess. Laws 1915, is plain. The legislature having determined that fuel used in the various state institutions in quantity must be from within the state, intended to safeguard the interests of the state by requiring that its designated agency, the board of administration, should buy that fuel which was cheapest considering the uses to which it should be put. To that end, the legislature provided how the fuel should be bought and established a standard which should be applied in measuring any bids that might be submitted pursuant to the Board's call for proposals. The board advertised for bids under the statute. It awarded the contracts. Plaintiff challenges the action of the board in that regard. Plaintiff in order to prevail must establish that the mandate of the statute that the contracts be awarded to the lowest bidders was not complied with.

It appears from the showing of the defendants that the prices bid were, and were intended to be, prices that should be paid per ton for the coal specified in the bids, of the particular composition and character therein described, and of the heat value in British thermal units therein set out. That is, the prices specified in the bids were not prices per ton for coal of the statutory contract grade but were prices per ton for the coal specified in the respective bids. This is established not only by the affidavits of the defendants and by the several bids, but as well by the contract which was awarded to and entered into by the plaintiff itself. It thus appears clear that when the bids were made the bidders contemplated that the prices per ton bid should not be varied according as the coal proposed to be furnished should vary from the statutory contract grade, but rather that the value of the coal proposed to be furnished should be measured and determined by comparison with the statutory standard. This was the method in fact followed by the defendant board in awarding the contracts. In other words, the standard of quality was established by the statute. The value of the coal proposed to be furnished was determined by its quality as measured by that standard. Value not price was determined by the standard. Price was fixed by the bids. Whether or not this was the intention of the legislature in fixing the standard is beside the question. It was the method contemplated by the bidders and followed by the

Board. As an unsuccessful bidder, who participated and made no objection until a competitor's bid was accepted, plaintiff is not entitled to any relief because of the manner of letting the contracts. Detroit Free Press Co. v. State Auditors, 47 Mich. 135, 10 N. W. 171; 36 Cyc. 875. The result attained was that at which the statute aimed,— securing the greatest value in fuel for the money paid. Plaintiff asserts that since the statute provides the contracts must be let to the lowest responsible bidder and fixes the standard of quality, the board charged with the duty of determining who that lowest bidder is has no power to pass upon the quality of the article to be purchased. Even so, here the various bidders proposed to furnish coal of different quality. The bids indicated the differences. The statute fixed a standard. None of the proffered coal complied with or was represented as complying with this standard. In determining the lowest bidder, the Board applied the standard. There is no showing, other than the mere allegation, that there was any fraud or wrongful intent in the letting of the contracts. So far as appears the board exercised its honest judgment. And so far as appears it bought the cheapest coal. It acted not only upon the information contained in the bids themselves but also upon knowledge acquired through experience and experiment as to the heat and steam value of the proffered coal. So far as appears on the record, plaintiff as a taxpayer suffered no damage,—rather, it benefited when the contracts complained of were let to the defendant corporations. The showing as made by the plaintiff is not such as to warrant interference with the action of the board prior to the trial of the cause on its merits. The order appealed from will therefore be affirmed.

CHRISTIANSON, Ch. J., and BIRDZELL, BURKE, and JOHNSON, JJ., concur.